IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Robert J. PENEGOR, attorney at law.

Supreme Court

*No. 80–2016–D. Filed October 13, 1981.*
(Also reported in 310 N.W.2d 796.)

PER CURIAM. *Attorney disciplinary proceedings; attorney's license suspended.*

On November 3, 1980 the Board of Attorneys Professional Responsibility filed with the court a complaint alleging that Robert J. Penegor, an attorney admitted to practice in this state since 1967 and who practices in Milwaukee, engaged in unprofessional conduct in connection with his clients' trust account and the monies of two clients deposited in it. The complaint alleges that the respondent settled a personal injury claim for $1,800,

which was deposited in his trust account on October 25, 1978. Of this amount, $1,175 belonged to the client. The respondent misappropriated the funds and, despite repeated requests from the client for payment, the respondent did not pay him until after November 6, 1979. In a second personal injury case it is alleged that Penegor settled a claim on behalf of his client for $500, which was deposited in his trust account on August 21, 1979. Between that time and January 30, 1980, when the money was sent to the client, the respondent misappropriated the funds.

The court referred the matter to the Hon. John Fiorenza as referee pursuant to SCR 21.09 (1980). The respondent did not file an answer to the complaint, and, at the request of Board counsel, a certified public accountant was appointed to prepare an audit of the respondent's trust account. Hearing was held on May 22, 1981, at which time the parties entered into a stipulation of facts setting forth that in the first case the $1,800 settlement was deposited in the respondent's trust account on October 27, 1978 and a check issued to the client for $1,175 from the trust account on December 28, 1979. In the second case the insurer issued a check payable to the client for $600 and sent it to the respondent. On March 15, 1979 the respondent wrote to the client requesting him to endorse the check and return it to the respondent for deposit in the trust account. Payment was made from the trust account in the amount of $600 to the client on July 11, 1979. A second settlement check made payable to the client in the amount of $500 was sent to the respondent, who wrote to the client requesting his endorsement of the check. The check was returned to the respondent and deposited into his trust account on August 21, 1979. Payment was made to the client from the trust account on January 31, 1980.

The stipulation also set forth facts pertaining to a complaint made by a client of the respondent after this

disciplinary action had been commenced. There a settlement of $1,500 was received and deposited into the trust account of the respondent on October 9, 1979. The client's portion, $750, was paid to the client on May 9, 1980.

By stipulation the parties agreed that a review of the trust account records made by Board audit showed that during 1978, 1979 and 1980 the respondent repeatedly received funds in trust belonging to his clients, placed them in his trust account and failed to preserve for the benefit of each respective client the funds which were delivered in trust to him and which belonged to the clients. Those funds were converted to uses other than those of the respective clients, and, consequently, during that period the trust account was repeatedly "out of trust." It was also stipulated that between March and June of 1980 the respondent made deposits of his own funds in excess of $13,000 into his trust account in order to bring that account "into trust."

On July 17, 1981 the referee filed his report, in which he made findings of fact consistent with the facts set forth in the stipulation, including the fact that the respondent was out of trust from fall, 1978 until June 27, 1980 and that he converted funds in his trust account for his own use. The referee found that none of the respondent's clients has suffered any financial loss except that payments to them had been delayed. The referee concluded that the respondent's actions in the manner in which he maintained his trust account constituted unprofessional conduct.

The referee recommended that the respondent's license to practice law be suspended for 45 days, at the end of which it be reinstated. He further recommended that for a period of two years after reinstatement the respondent submit quarterly statements of his trust account, prepared by an accountant, to the Board. In making his recommendation for discipline, the referee noted

that the respondent had been practicing for 14 years, that this was the first complaint received concerning his professional activities, that during the time in question he was experiencing unsettling personal problems, that he has initiated various safeguards in his office procedure with respect to bookkeeping, that since June of 1980 his account has not been out of trust and that the resultant publicity in this case has produced a salutory effect on the respondent. However, the referee indicated that the seriousness of the offense and the need to deter other attorneys from like conduct in order to protect the public warrant a suspension from the practice of law.

By order of August 25, 1981 we requested the respondent and counsel for the Board to file briefs within 30 days on the question of the appropriateness of the recommended discipline to the unprofessional conduct of the respondent. In its brief, the respondent argues that the referee's recommendation of discipline in the form of a 45-day suspension of his license to practice law should be accepted for the reason that it is adequate to achieve the three purposes of lawyer discipline, namely, rehabilitation of the attorney, protection of the public and a deterrant to other attorneys. Board counsel argues that a substantial period of suspension from the practice of law is required in this case in order to protect the public from a lawyer who has violated the terms of a trust relationship between himself and his clients and to deter other lawyers from using clients' funds which are readily available in their trust accounts, but it does not indicate what it considers to be a substantial period of suspension in this case.

We hereby adopt the findings and conclusions of the referee, but because of the serious nature of the professional misconduct on the part of the respondent, we believe that a sanction more severe than the 45-day suspension recommended by the referee is warranted.

It is ordered that the license of Robert J. Penegor to practice law in Wisconsin is suspended for a period of 90 days, commencing November 1, 1981.

It is further ordered that for a period of two years after reinstatement Robert J. Penegor submit quarterly statements of his trust account, prepared by an accountant, to the Board of Attorneys Professional Responsibility.

It is further ordered that on or before December 31, 1981 Robert J. Penegor pay the costs of this proceeding in the amount of $666.76 to the Board of Attorneys Professional Responsibility.